## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1-02-CR-134 |
| | : | |
| Plaintiff, | : | Chief Judge Beckwith |
| | : | |
| v. | : | |
| | : | **SENTENCING MEMORANDUM** |
| MATTHEW MOYE, | : | |
| | : | |
| Defendant. | : | |

Defendant Matthew Moye, by and through counsel, respectfully submits this Sentencing Memorandum for the Court's consideration in sentencing. During the pendency of this case, the United States Supreme Court held that the United States Sentencing Guidelines are not a mandatory constraint on the District Court's sentencing discretion. United States v. Booker, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005). In Booker, the Supreme Court found the Sentencing Guidelines unconstitutional insofar as it required courts to consider conduct at sentencing that was not proven by the government beyond a reasonable doubt to a jury. Id. As such, the court concluded that the Sentencing Guidelines were simply one of several factors which should be considered pursuant to 18 U.S.C. § 3553(a) in determining an appropriate sentence. Id.

-1-

18 U.S.C. § 3553(a) establishes seven factors that shall be considered in imposing any sentence:

1.  The nature and circumstances of the offense and the history and characteristics of the defendant;

2.  The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.  The kinds of sentences available;

4.  The kinds of sentences in the sentencing range established by the United States Sentencing Guidelines;

5.  Any pertinent policy statement established by the Sentencing Commission;

6.  The need to avoid unwarranted sentencing disparities among defendants with similar records or who have been found guilty of similar conduct; and

7.  The need to provide restitution to any victims of the offense.

As established in <u>Booker</u>, the United States Sentencing Guidelines are merely one of

seven factors that must be considered in determining an appropriate sentence.

The basic mandate and overriding principle of Section 3553(a) requires a district court to impose a sentence "*sufficient, but not greater than necessary,*" to comply with the four purposes of sentencing set forth in Section 3553:

(a)    retribution ("to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");

(b)    deterrence ("to afford adequate deterrence to criminal conduct");

(c)    incapacitation ("to protect the public from further crimes of the defendant"); and

(d)    rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

18 U.S.C. § 3553(a)(2).

The sufficient-but-not-greater-than-necessary requirement has been described as the "parsimony provision."  *See also* <u>Bifulco v. United States</u>, 447 U.S. 381, 387 (1980) (explaining that statutory construction "rule of lenity" applies to sentencing statutes as well as to substantive criminal offense statutes).  Critically, the parsimony

provision is not just another "factor" to be considered along with the others set forth in Section 3553(a). Rather, it sets an independent upper limit on the sentence a court may impose.

## A SENTENCING REDUCTION BASED UPON THE COCAINE/ CRACK COCAINE DISPARITY IS WARRANTED IN THIS CASE.

Defendant Moye pled guilty to one count of Possession with Intent to Distribute Cocaine Base, involving a total weight of approximately 19.66 grams. The probation office prepared an amended presentence report ("PSR")which set the base offense level at 26, for 5-20 grams of crack cocaine. *See* U.S.S.G. § 2D1.1(c)(4). After a reduction for accepting responsibility for the offense, U.S.S.G. § 3E1.1 (3 levels), the final offense level is 23. That offense level on the drug count, when coupled with Moye's criminal history category of V, results in an advisory guideline imprisonment range of 84-105 months.

As the Court well knows, the sentence called for by the Guidelines is driven largely by the weight and type of drug. The Guidelines treat the possession of approximately 20 grams of "crack" cocaine the same as they treat possession of 2,000 grams (2 kilograms) of powder cocaine, placing them at a base offense level of 26. *See* U.S.S.G. § 2D1.1(c)(4). That is, an offense involving crack is sentenced 100 times more harshly than an offense involving the same amount of powder (100-to-1

ratio). Had Moye's offense involved the same amount of powder at a 1-to-1 ratio, the base offense level would be level 12, *see* U.S.S.G. § 2D1.1(c)(12), and after acceptance of responsibility, the advisory guideline range would be 18-24 months. If the ratio were 20-to-1, the offense level would be 18, *see* U.S.S.G. § 2D1.1(c)(7), and the advisory guideline range would be 37-46 months after an adjustment for acceptance of responsibility.

      a.      **Unwarranted Disparity and Respect for the Law**

The Court is required to consider relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a)(5). Although not technically policy statements within the meaning of the Guidelines, the Commission has issued a number of reports in which it had concluded that the 100-to-1 ratio is much too high. *See generally* U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (Feb. 1995), *available at* http://www.ussc.gov/crack/exec.htm; U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (April 1997), *available at* http://www.ussc.gov/r_congress/NEWCRACK.PDF; U.S. Sentencing Commission, *Report to the Congress: Cocaine and Federal Sentencing Policy* (May 2002) (hereinafter "2002 Report"), *available at* http://222.ussc.gov/r_congress/02crack/2002crackrpt.htm; U.S. Sentencing

Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Federal Sentencing Reform* (Nov. 2004) (hereinafter "Fifteen Year Report"), *available at* http://www.ussc.gov/15_year/15year.htm.

More Specifically, in its 2002 Report, the Commission reported in part the following findings: (1) the current penalties exaggerate the relative harmfulness of crack cocaine; (2) the current penalties sweep too broadly and apply most often to lower level offenders; (3) the current penalties overstate the seriousness of most crack cocaine offenses and fail to provide adequate proportionality; and (4) the current penalties' severity mostly impacts minorities. Based upon its findings, the Commission unanimously and firmly concluded "that the various congressional objectives can be achieved more effectively by decreasing substantially the 100-to-1 drug quantity ratio." 2002 Report at v-viii.

The Commission's consistent conclusion over the past ten years has been that crack is punished too harshly relative to powder. The Court should give great weight to the Commission's views on this issue, as have other district courts. See United States v. Harris, 2005 U.S. Dist. LEXIS 3958 (D.D.C. Mar. 7, 2005) (Robertson, J.) (finding that Sentencing Commission's finding "are sound authority for the proposition that the sentencing ranges for [the defendants'] crime by the Guidelines

-6-

are greater than necessary"); *see also* <u>United States v. Smith</u>, ____ F. Supp. 2d ____,

2005 WL 549057 (E.D. Wis. Mar. 3, 2005) (Adelman, J.): <u>United States v. Thomas</u>,

)___ F. Supp. 2d ____, 2005 WL 602971 (D. Mass. Mar. 14, 2005) (Ponsor, J.);

<u>Simon v. United States</u>, 2005 U.S. Dist. LEXIS 4551 (S.D.N.Y. Mar. 17, 2005)

(Sifton, J.).

This Court is required to avoid unwarranted disparities in imposing a sentence.

18 U.S.C. § 3553(a)(6).  It is also required to impose a sentence that will promote

respect for the law.  *Id.* § 3553(a)(2)(A).  To apply the 100-to-1 ratio undermines

these requirements in several ways.  First it creates racial disparity.  Crack sentences

are imposed disproportionately on minorities, including African-Americans.  *See,*

*e.g.*, U.S. Sentencing Commission, *2002 Sourcebook of Federal Sentencing Statistics*,

Table 34, Race of Drug Offenses for Each Drug Type (81.4% of persons sentenced

for crack offenses are black, whereas only 30.9% of persons sentenced for powder

offenses are black), *available at* http://www.ussc.gov/ANNRPT/2002/SBTOC02.htm;

*see also* 2002 Report at 102-03.  This study is consistent with a study performed by

the United States Probation Department in the early 1990's, at the request of Judge's

Weber and Rice, which found that over 85% of the people effected by the 100-to-1

ratio were African-American. But Congress has instructed "that the guidelines and

policy statements are [to be] entirely neutral as to the race . . . of offenders."  28

U.S.C. § 994(d). Even though the Guidelines are not designed deliberately to sentence minorities more harshly, the fact remains that in practice they do. Further, as the Sentencing Commission has concluded, "even the perception of racial disparity . . . is problematic. Perceived improper racial disparity fosters disrespect for and lack of confidence in the criminal justice system among those very groups that Congress intended would benefit from the heightened penalties for crack cocaine." 2002 Report at 103; *see also* Fifteen Year Report at 113, 115, 117, 132.

Second, applying the 100-to-1 ratio creates unwarranted jurisdictional disparity. Both powder cocaine and crack cocaine are, as they are in the federal system, Schedule II controlled substances under Ohio law. This fact creates unwarranted sentencing disparities, as two individuals committing the same offense will receive dissimilar sentences depending upon the fortuity of whether the federal government exercises jurisdiction. *See* 2002 Report at 81 (stating that "[b]ecause the states generally have not adopted the federal structure for cocaine offenses, the decision whether to prosecute a crack cocaine offense at the federal or state level can have an especially significant effect for a crack cocaine offender").

Third, applying the 100-to-1 ratio will create disparity and disrespect for the law when the bases upon which the ratio is predicated have been disproved. For example, while crack is more addictive than cocaine, it is so because of the way it is

consumed.  When powder is injected, it "puts the user at a similar risk of addiction as smoking cocaine, but only 2.8 percent of powder cocaine users inject the drug." 2002 Report at 93-94.  Still, the Sentencing Commission has concluded that "[t]he addictive nature of crack cocaine . . . independently does not appear to warrant the 100-to-1 drug ratio." *Id*. at 94.  Another justification for harsher penalties, that a "crack baby" will suffer more harm than a baby whose mother ingests powder, appears to have no scientific validity.  As the Commission observed, "[R]ecent research reports no difference between the negative effects from prenatal crack cocaine and powder cocaine exposure, no differential in the drug quantity ratio based directly on this particular heightened harms appears warranted." *Id*. at 94.

Fourth, applying the 100-to-1 ratio does not promote respect for the law when it does not mesh with public perception of the seriousness of the offense.  As the Sentencing Commission found when it commissioned a survey ten years ago, "perhaps the most important finding [in regard to drug offenses] is that the general public does not make important distinctions between trafficking in heroin, powder cocaine and crack cocaine . . . ."  U.S. Sentencing Commission, *Public Opinion on Sentencing Federal Crimes* at 86 (Oct. 1995), *available at* http://www.ussc.gov/nss/jp_escum.htm; *see* United States v. Wilson, 350 F. Supp. 2d 910, 918 (D. Utah 2005) (whereas for the most part public opinion converges with

-9-

Guidelines sentences, "[i]t is important to note a few areas of disagreement between the public's views and Guidelines sentences[;]" and in particular, "'[t]he public failed to support the Guidelines' differentially harsh treatment of distribution of crack cocaine (as compared to powder cocaine)") (citing to book published by the two researchers who conducted survey for Sentencing Commission).

Fifth, in dropping below a federal sentencing guideline range for crack in the case of United States v. Mulvey, No. 03-10075-001 (C.D. Ill. Feb. 11, 2005), U.S. District Judge McDade made the common-sense observation that, "[g]iven the Draconian punishment associated with crack cocaine, to follow the guideline range for this case would go beyond what is needed to serve the purpose of sentencing . Respect for the law doesn't always mean sending people to prison for as long as you can." Elaine Hopkins, *McDade Sentencing Below Guidelines:  Judge Says This Crack Cocaine Case Merited a Discretionary Approach*, Peoria Journal Star, Feb. 12, 2005, *available at* http://www.pjstar.com/stories/021205/TRI_B5IGJJSI.012.shtml.

Defendant Moye asserts that the disparity between cocaine and crack cocaine sentences is unjustified and this Court should consider a sentencing reduction based upon this unfair situation.

## CONCLUSION

Based upon the foregoing, Defendant Matthew Moye, respectfully requests that this Court sentence him to a sentence below the advisory United States Sentencing Guideline range established by the United States Probation Department in its amended Presentence Investigation Report.

Respectfully submitted,

STEVEN S. NOLDER
FEDERAL PUBLIC DEFENDER

s/W. Kelly Johnson
W. Kelly Johnson (0037241)
Assistant Federal Public Defender
36 East Seventh Street, Suite 2000
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Matthew Moye

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Timothy D. Oakley, Assistant United States Attorney, by electronic filing, on August 7, 2006.

s/W. Kelly Johnson
W. Kelly Johnson